**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

WENGUI GUO, a/k/a MILES KWOK,

        Plaintiff,

        v.

SINCLAIR BROADCAST GROUP, INC, et al.,

        Defendants.

                           /

CIVIL ACTION NO.: 9:19-CV-81099

**DEFENDANTS' MOTION TO DISMISS
AND INCORPORATED MEMORANDUM OF LAW**

Defendants Sinclair Broadcast Group, Inc., owner of WPEC CBS 12 in West Palm Beach, and CBS12 reporter Jay O'Brien (together, "CBS12" or "Defendants"), by and through counsel, hereby move this Court pursuant to Rule 12(b)(6) to dismiss the Complaint, Dkt. 1 ("Compl."), with prejudice.  In support thereof, Defendants state as follows:

**PRELIMINARY STATEMENT**

The Plaintiff in this case, billionaire Chinese dissident Wengui Guo, acknowledges in his Complaint that he regularly uses the United States court system to settle political disputes originating in mainland China, *i.e.*, "to challenge those who seek to discredit him."  Compl. ¶ 15. This lawsuit is one of *fifteen* defamation cases that Guo has brought in this country, in addition to scores of other types of cases involving Guo and his affiliated companies.  Many of Guo's court battles involve allegations that he is a "spy" for China.  *Id*. ¶¶ 17-18.

CBS12 reported, accurately, on one of those cases.  In the July 24, 2019 broadcast at issue in this case, O'Brien summarized a Southern District of New York federal court filing alleging that Guo, a member of Mar-a-Lago who has forged ties with allies of President Trump, was actually an "agent in the service of the People's Republic of China and the Chinese

1

Communist Party."  *See* July 24, 2019 CBS news report, attached hereto as Exhibit A; *see also* Defendant's Answer & Counterclaims to Second Am. Compl. ¶ 48, *Eastern Profit Corp. Ltd. v. Strategic Vision U.S., LLC* ("*Eastern Profit*"), No. 1:18-cv-2185-JGK-DCF (S.D.N.Y. July 19, 2019), Dkt. 114, attached as Exhibit B.[1]

Guo does not contend that CBS12 failed to report the judicial allegations accurately, only that it failed to independently investigate the allegations, which he claims are untrue.  Compl. ¶ 28 ("Mr. Guo is not, nor has he ever been a spy for China.").  The Complaint should be dismissed as a matter of law for two separate and independent reasons.

*First*, the "fair report" privilege applies to the challenged news report and bars Guo's claim.  Florida law allows reporters to inform the public about judicial proceedings—and does not require an investigation into the truth or falsity of allegations in documents such as the Strategic Vision Counterclaims.  Under the fair report privilege, a fair summary of the official proceeding or record is all that is required.  *See, e.g.*, *Woodard v. Sunbeam Television Corp.*, 616 So. 2d 501, 503 (Fla. 3d DCA 1993) (affirming dismissal based on the fair report privilege

---

[1] This Court may properly consider CBS12's news report in the context of this Rule 12(b)(6) motion because it is integral to the Complaint.  *See, e.g., Hoffman-Pugh v. Ramsey*, 312 F.3d 1222, 1225-26 (11th Cir. 2002) (publication that is basis of plaintiff's complaint may be considered by the court on motion to dismiss); *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002) (news article that formed the basis of plaintiff's defamation claims may be properly considered on a motion for judgment on the pleadings); *see also Harris v. Ivax Corp.,* 182 F.3d 799, 802 n.2 (11th Cir. 1999) (a document central to the complaint that the defense appends to its motion to dismiss is properly considered on a Rule 12(b)(6) motion provided that its contents are not in dispute).  A DVD of the broadcast report is attached hereto as Exhibit A, and is available online at https://cbs12.com/news/local/chinese-billionaire-and-mar-a-lago-member-accused-of-spying-he-disputes.  The Court may also properly consider matters that are subject to judicial notice.  *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (district court properly took judicial notice of the documents in previous action on a motion to dismiss); *Thompson v. Florida Bar*, 526 F. Supp. 2d 1264, 1274 n.11 (S.D. Fla. 2007) (filings in a different case can be judicially noticed for the statements contained therein).  In this case, the Court may properly take notice of the existence of the Strategic Vision Counterclaims that formed the basis for the CBS12 news report, which are attached as Exhibit B, as well as Mr. Guo's other defamation actions and associated court rulings.

because the reporter "had no duty to determine the accuracy of the information contained in the [public record]").

    ***Second***, even apart from the fair report privilege, the Complaint's allegations are insufficient as a matter of law because Guo has not met his burden to plead either pre-suit notice to the Defendants, or facts sufficient plausibly to establish "actual malice" fault, both required elements of his claim.  Under Florida law, a plaintiff seeking to sue a media defendant for defamation must provide pre-suit notice to the defendants.  *See* Fla. Stat. § 770.01.  Guo has not and cannot allege compliance with Chapter 770's notice requirement because there was no pre-suit notice to CBS12.  *Nelson v. Associated Press, Inc*., 667 F. Supp. 1468, 1473-75 (S.D. Fla. 1987) (notice pursuant to § 770.01 is a condition precedent to defamation action).  Though the notice defect alone is sufficient to require dismissal of this action, because the Plaintiff's claims lack substantive merit, Defendant also addresses the substance of the purported claims herein without waiver of the notice defect.

    As an admitted public figure who has thrust himself into repeated court battles over whether he is a "spy" for China, Plaintiff must plead facts plausibly establishing, and ultimately prove by "clear and convincing" evidence, that Defendants published the statements with actual knowledge that they were false or with a high degree of awareness of probable falsity.  *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703 (11th Cir. 2016).  Because the Complaint's allegations, even if accepted as true for purposes of this motion, do not establish actual malice as a matter of law, and cannot do so, dismissal is required for this reason as well.  *Id.*; *cf. Frieder v. Prince*, 308 So. 2d 132, 134 (Fla. 3d DCA 1975) (affirming dismissal because complaint "fails to set forth facts which are legally sufficient to establish actual malice").

## RELEVANT BACKGROUND

Plaintiff Wengui Guo, also known as Miles Kwok, is a Hong Kong citizen seeking political asylum in the United States.  Compl. ¶ 1.  Upon fleeing China in fear of political persecution, the Chinese government arrested several members of his family and seized more than $30 billion owned by his family.  *Id*. ¶¶ 9, 11.  The Complaint alleges that, since leaving China, Guo has "been an outspoken critic of the corruption in the Chinese Government and its ruling communist party," and has "contributed much of his considerable wealth" to pursuing whistleblower actions related to China.  *Id*. ¶ 28.  He is based in New York City but is a "longstanding member" of President Trump's resort, Mar-a-Lago.  *Id*. ¶¶ 1, 31.  His outspoken views and ties to members of the President's inner circle, notably Breitbart News founder Stephen K. Bannon, vaulted Guo into the national limelight, all before the news report at issue in this case was published.  *See, e.g.*, Lauren Hilgers, *The Mystery of the Exiled Billionaire Whistle-Blower*, THE NEW YORK TIMES MAGAZINE (January 10, 2018), https://www.nytimes.com/ 2018/01/10/magazine/the-mystery-of-the-exiled-billionaire-whistleblower.html.

## I.     Guo's Numerous Defamation Cases

Guo's weapon of choice against enemies seeking to "silence" him is the court system.  Compl. ¶ 13; *see also id*. ¶ 15 ("To counter this unprecedented disinformation campaign, Guo has taken to U.S. courts in reliance on the rule of law to challenge those who seek to discredit him.").  He states that he has "successfully sued numerous individuals for defamation for calling Guo a 'spy' for the CCP; a 'fraud'; a 'liar' and other nefarious terms."  *Id*. ¶ 16.  The Complaint specifically references two other defamation cases he has brought, one in the Eastern District of Virginia and another in the District of Maryland.  *Id*. ¶¶ 17-18; *see also Guo v. Yeliang Xia*, No. 1:18-cv-00174-LO-TCB (E.D. Va. Feb. 14, 2018) (involving allegations on Twitter that Mr. Guo was a "rapist" who was a member of the Chinese mafia); *Guo v. Hongkuan Li*, No. 8:18-cv-

4

00259-PWG (D. Md. Jan. 26, 2018) (involving allegations on Twitter and YouTube that Mr.
Guo was a "communist spy puppy").

Guo has actually brought at least fifteen defamation cases, including this one.  Most of
these lawsuits are related to social media posts by fellow Chinese dissidents who accuse Guo of
being a spy for the Chinese Communist Party or the perpetrator of various crimes; in many of
those cases, the defendant filed a defamation counterclaim against Guo.  *See, e.g.*, *Guo v. Jun
Chen*, No. 2:18-cv-03800-MCA-MAH (D.N.J. Mar. 20, 2018); *Guo v. Baosheng Guo*, No. 1:18-
cv-01064-TSE-IDD (E.D. Va. Aug. 27, 2018); *Guo v. Samuel Dan Nunberg & Zheng Wu*, Index
No. 162069/2018 (N.Y. Sup. Ct. N.Y. Cty., Dec. 21, 2018); *Guo v. Biao Teng*, No. 3:18-cv-
02110-MAS-TJB (D.N.J. Feb. 14, 2018); *Guo v. Xianmin Xiong*, Index No. 151430/2018 (N.Y.
Sup. Ct. N.Y. Cty., Feb. 14, 2018); *Guo v. Jianbin Yuan*, No. 2:18-cv-02276-SVW-JC (C.D. Cal.
Mar. 20, 2018); *Guo v. Yudan Lin*, No. 3:18-cv-02982-MGL (D.S.C. Nov. 5, 2018); *see also
Weican "Watson" Meng & Boxun, Inc., v. Guo Wengui*, Index No. 159636/2017 (N.Y. Sup. Ct.
N.Y. Cty., Nov. 7, 2017) (defamation counterclaim filed by Guo against the founder of Boxun
News, a U.S.-based media outlet focused on news about China).  Noting newspaper profiles by
the *New York Times*, *Wall Street Journal*, and Bloomberg "openly wondering whether his
allegations about China's government are true," Guo was held to be a limited-purpose public
figure by a California Superior Court judge considering a motion seeking to dismiss his
defamation case.  *See* Minute Order at 4, *Guo v. Jianbin Yuan*, No. BC720420, at 4 (Cal. Super.
Ct. L.A. Cty., Dec. 6, 2018), attached as Exhibit C.  Guo admitted that he was a limited-purpose
public figure in his brief opposing that defendant's motion.  *See* Pl.'s Opp. to Def.'s Special Mot.
to Strike at 6-7, *Guo v. Jianbin Yuan*, BC720420 (Cal. Super. Ct. L.A. Cty., Nov. 19, 2018),
attached as Exhibit D.

Guo's defamation cases against U.S.-based media figures and news outlets also involve allegations related to espionage.  A case brought in this Court against longtime President Trump confidante Roger Stone related to statements on Infowars.com.  *See Guo v. Roger J Stone*, No. 1:18-cv-20983-JEM (S.D. Fla. Mar. 15, 2018).  Three of the defamation cases, including this one, relate to news reporting about the *Eastern Profit* lawsuit that is pending in the Southern District of New York.  *See, e.g.*, *Guo v. The McClatchy Co., et al.*, No. 1:19-cv-23232-JEM (S.D. Fla. Aug. 2, 2019) (related to a *Miami Herald* article); *Guo v. Strategic Vision US LLC et al.*, Index No. 157538/2019 (N.Y. Sup. Ct. N.Y. Cty. Aug. 1, 2019) (related to a *Wall Street Journal* article).

## II.    The *Eastern Profit v. Strategic Vision* Lawsuit

Guo is not a party to the *Eastern Profit* case, although he figures prominently in both sides' allegations, which have been the subject of intense press interest.  *See, e.g.*, Ben Schreckinger, *How a renegade Chinese billionaire became a center of D.C. intrigue*, POLITICO (July 6, 2019), https://www.politico.com/story/2019/06/07/guo-wengui-chinese-billionaire-1356594.  The subject of the dispute is a contract between Eastern Profit, a company allegedly tied to Guo, and the consulting firm Strategic Vision, to "perform research and analytics on numerous Chinese nationals who were allegedly linked to top Party Officials – work that Guo himself soon presented as necessary for his struggle against the evils of the Chinese Communist Party."  *See* Exhibit B ¶ 11 (Strategic Vision Counterclaims).

In the Southern District of New York court filing, Strategic Vision contends that "the real Guo was never a dissident," and that he had on video "professed his personal loyalty to 'Chairman Xi'" and promised to bring "ruinous tort litigation against critics of the communist regime."  *Id*. ¶ 12.  As a "dissident-hunter, propagandist, and agent in the service of the People's Republic of China," Guo supposedly "never intended to use the fruits of Strategic Vision's

6

research against the Chinese Communist Party." *Id.* ¶ 48.  According to the judicial filing by

Strategic Vision, Eastern Profit failed to pay the agreed-upon fee and terminated the contract

after just one month. *Id.* ¶¶ 96-99.

## III.   The CBS12 Broadcast

Following widespread news stories about the Strategic Vision counterclaims by other

journalistic outlets, CBS12 published its own story on July 24, 2019.  Standing "near Mar-a-

Lago," CBS12's Jay O'Brien in a nearly three-minute news segment placed Strategic Vision's

allegations in the broader context of security concerns about President Trump's resort. *See*

*generally* Exhibit A (the "Report").  O'Brien reported:

> In a New York lawsuit - buried in a 54-page business dispute - this claim
> that Mar-a-Lago member Guo Wengui is a spy for the Chinese
> government, a deal Guo helped negotiate between companies Eastern
> Profit and Strategic Vision now the subject of a court battle. Attorneys for
> Strategic Vision say they have audio recordings of Guo, a frequent Mar-a-
> Lago vacationer, pledging allegiance to Chinese president Xi Jinping,
> saying that points to Guo's role as a Chinese asset.

*Id.*  The Report also prominently included comment from Guo's lawyers that Strategic Vision's

allegations "utterly lacks credibility," language printed across the screen, and O'Brien added that

Guo's lawyers had pointed CBS12 to "two federal lawsuits, one from this Maryland federal court

that sided with Guo in other defamation cases." *Id.*

As part of the broader look at Mar-a-Lago, O'Brien consulted security expert and former

CIA asset recruiter Lisa Ruth about the security concerns posed at the resort. *Id.*  Speaking about

the resort generally, she observed that "[t]here's no question in my mind that every intelligence

agency, even the ones friendly to us, identified this as a place of vulnerability." *Id.*  She also

noted that "the fact that a member, probably a longtime member, has gone to Mar-a-Lago over

the years, an intelligence agency will attempt to recruit them." *Id.*

O'Brien also offered an update on a separate news story from March of this year, in which "Youjing Zhang, a Chinese national, was arrested for trying to break into President Trump's club with malware on a flash drive." *Id.* He reported that CBS12 "had learned recently that the government has classified documents in her case." *Id.* At the beginning of the news report, O'Brien took care to differentiate the charges against Zhang from the allegations against Guo, noting that Strategic Vision's "claims are *different* than what we've heard before and possibly harder to prove." *Id.* (emphasis added).

The Report ended with O'Brien stating that "[a]s for Guo, his lawyers say he's been an outspoken critic of the Chinese government. The opposition in that suit says that could just be a cover." *Id.*

## IV.     This Defamation Action

Guo asserts one claim for defamation *per se*, alleging the broadcast "published untrue statements about Plaintiff, including stating that Mr. Guo had committed espionage." Compl. ¶ 34. The Complaint alleges that the interview with Ruth, the expert, and the update on Zhang's case all imply that Guo may be a spy. *Id.* ¶¶ 21-23; 29-31. Objecting to an alleged lack of investigation on CBS12's part, Guo alleges that "[s]imilar statements made against Mr. Guo are demonstrably false and have, in fact, been ruled to be defamatory in two separate courts," and that "even a modicum of due diligence would have shown the falsity of these statements." *Id.* ¶¶ 36, 39. He demands a jury trial and more than $50 million in damages.

## <u>ARGUMENT</u>

A complaint that fails to state a claim upon which relief can be granted must be dismissed. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must contain sufficient facts to state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of

the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Twombly*, 550 U.S. at 555); *see also Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir.

2013) (providing for dismissal where the plaintiff "merely recited an element of a claim without

providing the facts from which one could draw such a conclusion").  Moreover, a complaint

must be dismissed "when its allegations, on their face, show that an affirmative defense bars

recovery on the claim." *Douglas v. Yates,* 535 F.3d 1316, 1321 (11th Cir. 2008).

Under Florida law, defamation is defined as "the unprivileged publication of false

statements which naturally and proximately result in injury to another." *Wolfson v. Kirk*, 273 So.

2d 774, 776 (Fla. 4th DCA 1973).  In order to state a cause of action for defamation, Guo must

establish: (1) a false and defamatory statement of fact by CBS12; (2) of and concerning him;

(3) that is not privileged; (4) that was published with the requisite degree of fault; and

(5) resulting in damages.  *See Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800, 803-04

(Fla. 1st DCA 1997); *see also* RESTATEMENT (SECOND) OF TORTS § 558 (1977).

Both of the defenses raised by CBS12 are properly before the Court on a preliminary

motion.  The question of whether the fair report privilege applies is, in the first instance, "a

question of law for the court to decide." *Huszar v. Gross*, 468 So. 2d 512, 515-16 (Fla. 1st DCA

1985).  Because both a challenged report and public court records can be considered on a motion

to dismiss, *see* supra, note 1, courts appropriately apply the fair report privilege on a 12(b)(6)

motion, *see, e.g.*, *Jeter v. McKeithen*, No. 5:14-cv-00189-RS-EMT, 2014 U.S. Dist. LEXIS

142857, at *6 (N.D. Fla. 2014) (dismissing based on the fair report privilege plaintiff's

defamation claims related to a broadcast about cyberbullying charges); *see also Vanmoor v. Fox

News Network LLC*, 34 Media L. Rep. (BNA) 2022, 2024 (Fla. 17th Jud. Cir. May 26, 2006)

(granting motion to dismiss defamation claims based on the fair report privilege where article

relied on court documents).  Similarly, the adequacy of pleadings is a question for the Court.

Indeed, rigorous application of the plausibility standard for fault pleading takes on particular

importance in cases, such as this one, arising from speech that implicates constitutional rights.

As the Court of Appeals recently explained, "application of the plausibility pleading standard

makes particular sense when examining public figure defamation suits."  *Michel*, 816 F.3d at

702.  This is because, in such cases, "there is a powerful interest in ensuring that free speech is

not unduly burdened by the necessity of defending against expensive yet groundless litigation"

and "[f]orcing publishers to defend inappropriate suits through expensive discovery proceedings

in all cases would constrict that 'breathing space'" "needed to ensure robust reporting on public

figures and events."  *Id.* (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 271-72 (1964)).

        News media defamation claims are also susceptible to early judicial resolution for a more

practical reason:  "[U]nlike in most litigation, in a libel suit the central event—the

communication about which suit has been brought—is ordinarily before the judge at the pleading

stage.  He or she may assess it upon a motion to dismiss, firsthand and in context."  2 Robert D.

Sack, *Sack on Defamation* § 16.2.1 (5th ed. 2017).  As Judge Sack has documented in his

authoritative treatise on the subject, courts frequently dismiss defamation claims on a motion to

dismiss where, as here, an examination of the challenged statements reveals that they are

privileged as a matter of law or that the plaintiff has not (and often cannot) plausibly allege

actual malice.  *Id.*; *see also Turner v. Wells*, 879 F.3d 1254 (11th Cir. 2018) (affirming dismissal

of defamation claims for failure to plead actual malice); *Michel*, 816 F.3d 686 (same).

## I.      THE REPORT IS PROTECTED BY THE "FAIR REPORT" PRIVILEGE

        The Report begins with the camera panning over the Southern District of New York court

filing in *Eastern Profit v. Strategic Vision* that serves as its principal source.  *See* Exhibit A.  The

visual imagery signals to the viewer that this is a story about publicly filed court records.

Because Guo has not alleged that the Report inaccurately reported Strategic Vision's allegation that he was a spy for the Chinese Government – and, in light of the document, cannot so allege – the Report is privileged and his defamation claim should be dismissed.

In Florida, given the importance of coverage of government operations, the news media have a privilege to broadcast "the contents of an official document" and information received from government officials "so long as [the] account is reasonably accurate and fair." *Woodard*, 616 So. 2d at 502. A broadcast is "reasonably accurate and fair" if it conveys a "substantially correct" account of what is in the official record, irrespective of whether the official record truthfully reflects the actual events. *Id.*; *see also Ortega v. Post-Newsweek Stations, Fla., Inc.*, 510 So. 2d 972, 975-76 (Fla. 3d DCA 1987) (holding that television station had a privilege to report allegedly defamatory testimony given at an official proceeding). The fair report privilege includes reporting on court proceedings. *See Jamason v. Palm Beach Newspapers, Inc.*, 450 So. 2d 1130, 1133 (Fla. 4th DCA 1984) (holding that the fair report privilege "concerns only the accurate reporting of an occurrence in a judicial proceeding," and report about deposition was substantially accurate and privileged); *Vanmoor*, 34 Media L. Rep. at 2024 ("As a matter of law, a person who provides a fair report of information from public records or court documents is privileged to provide such information without being subjected to a defamation suit.").

Put another way, members of the press are not required to test the accuracy of the statements they report from the public record. *Ortega*, 510 So. 2d at 976 ("[T]he press has no duty to go behind statements made at official proceedings and determine their accuracy before releasing them."). Under the fair report privilege, it is only the publisher's *summary* of the information that must be accurate, as opposed to the information in the public document itself. *Hatjioannou v. Tribune Co.*, 8 Media L. Rep. (BNA) 2637, 2639 (Fla. 13th Jud. Cir. Nov. 15,

11

1982), *aff'd* 440 So. 2d 360 (Fla. 2d DCA 1983) (affirming trial court without opinion); *see also El Amin v. Miami Herald*, 9 Media L. Rep. (BNA) 1079, 1081 (Fla. 11th Jud. Cir. Jan. 17, 1983) ("The test of accuracy for purposes of the privilege requires that the publications be compared not with the events that actually transpired, but with the information that was reported from official sources.") (citations omitted).

Here, O'Brien's reporting represents a fair and accurate summary of the espionage allegations in the Strategic Vision counterclaims, and as such it is protected by the fair report privilege. *See* Exhibit B ¶ 86 (Strategic Vision Counterclaims) ("Guo Wengui acts as an agent of influence on behalf of Chinese Communist Party Chairman Xi Jinping and the Chinese MSS"). The Report clearly attributes the "claim that Mar-a-Lago member Guo Wengui is a spy for the Chinese government" to its source in the *Eastern Profit v. Strategic Vision* dispute. The crux of the Complaint is that Strategic Vision's allegations were false, as "even a cursory review of court records" or a "modicum of due diligence" would have shown. Compl. ¶¶ 38, 39; *see also* Compl. ¶ 28 ("[W]hile the assertion does not dignify a response, Mr. Guo is not, nor has he ever been a spy for China."). However, the Complaint only takes issue with the underlying allegation, and does not explain how the Report somehow mischaracterized the judicial record it summarized. As such, the privilege applies and Guo's claims fail as a matter of law. *Vanmoor*, 34 Media L. Rep. at 2024 (plaintiff's failure to allege that defendant inaccurately reported contents of court record warranted dismissal of lawsuit based on article to which it was apparent that privilege applied). CBS12 had no duty to investigate the truth of the espionage allegations

12

accurately summarized from court records,[2] and his defamation claim should be dismissed on the basis of privilege.  *Ortega*, 510 So. 2d at 976; *Woodard*, 616 So. 2d at 502-03.

The fact that the Report also included general comments by a security expert and updated the "different" criminal charges in *United States v. Zhang*, No. 9:19-cr-80056-RKA-1 (S.D. Fla. Apr. 12, 2019), does not change the result.  The Complaint contends that these aspects of O'Brien's reporting are an attempt to "further sensationalize the 'news' story" and create the impression that Guo was a "spy."  Compl. ¶ 29.  Not so.  The allegations *about Guo* derive from the Strategic Vision counterclaims; neither the security expert's comments about espionage generally nor the update on the government's case against Ms. Zhang are about Guo.  *See generally* Exhibit A.  As such, Guo has no claim because those statements are not reasonably understood as about him—a requirement of defamation law.  *Thomas*, 699 So. 2d at 803-04; *see, e.g.*, *Jones v. Cmty. Newspapers, Inc.*, No. 3:05-cv-240-J-16, 2006 U.S. Dist. LEXIS 61211, at *8-9 (M.D. Fla. Aug. 29, 2006) (dismissing business owner's defamation claim because reference to the company was not "of and concerning" the owner, who was not identified); *McIver v. Tallahassee Democrat, Inc*., 489 So. 2d 793, 794 (Fla. 1st DCA 1986) (statement that president of a corporation testified before the grand jury in a bribery case was not "of and concerning" the company and did not implicate it in any wrongdoing).

In any event, the fair report privilege allows reporters license to use colorful language, or even if to "sensationalize[s]" a news report, so long as the summary is substantially accurate.  *See, e.g., Alan v. Palm Beach Newspapers, Inc.*, 973 So. 2d 1177, 1180 (Fla. 4th DCA 2008) (affirming summary judgment on the basis of the fair report privilege, noting that while "[s]ome of the published information may have been phrased to catch the Post's readership's attention,

---

[2] Although *not* required under the privilege, the Report did in fact provide Guo's lawyers the opportunity to contest the allegation.  *See generally* Exhibit A (CBS12 news report).

. . . this alone does not arise to actionable defamation"); *see also Jamason*, 450 So. 2d at 1132 ("Whether the press reports the item on page one with a banner headline or on the last page of the last section is an editorial decision, not a legal one.").  The Complaint appears to acknowledge that security concerns about Mar-a-Lago are reasonable and newsworthy, noting that "on a number of occasions, Mr. Guo warned the staff at Mar-a-Lago of the potential for attempts by agents of China to infiltrate the club."  Compl. ¶ 32.  In addition, the expert's opinion[3] and the update based on another publicly available court record are independently protected by privilege under Florida law.  The defamation claim should therefore be dismissed.

## II.     THE COMPLAINT FAILS TO ALLEGE PRE-SUIT NOTICE OR FACTS PLAUSIBLY ESTABLISHING ACTUAL MALICE

The Complaint should also be dismissed for the separate and independent reasons that it fails to allege essential elements to sustain a defamation claim under Florida law: (1) pre-suit notice, Fla. Stat. § 770.01; and (2) facts sufficient to allege "actual malice" fault, as required for an admitted public figure who uses the court system to litigate political disputes, *Turner*, 879 F.3d at 1271 (citing *Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*, 811 So. 2d 841, 845 (Fla. 4th DCA 2002)).

### A.     The Complaint Does Not Allege Pre-Suit Notice to CBS12

A plaintiff seeking to sue a media defendant for defamation must provide pre-suit notice to the defendants.  *See* Fla. Stat. § 770.01, et seq.  To comply with the statute, the notice must identify with particularity each of the statements alleged to be false and defamatory so that the

---

[3] Under Florida law, a statement of pure opinion based on fully disclosed facts is privileged and cannot be defamatory.  *See, e.g.*, *Hay v. Independent Newspapers*, 450 So. 2d 293, 295-96 (Fla. 2d DCA 1984); *From v. Tallahassee Democrat, Inc.*, 400 So. 2d 52, 57 (Fla. 1st DCA 1981).  Security expert Lisa Ruth's comments in the news report on the topic of espionage generally – that other countries' espionage agencies are likely to have identified Mar-a-Lago as a security vulnerability and attempt to recruit its members – is a statement of pure opinion based on facts she discloses to CBS12 viewers. *See generally* Exhibit A (CBS12 report).

would-be defendant has a full opportunity to analyze the claims and make corrections if appropriate. *See, e.g.*, *Nelson*, 667 F. Supp. at 1474; *Hulander v. Sunbeam Television Corp.,* 364 So. 2d 845, 847 (Fla. 3d DCA 1978).  Notice is a condition precedent to filing suit.  *See Carroll-Brufsky v. E.W. Scripps Co*., No. 2:11-cv-500, 2012 U.S. Dist. LEXIS 49278, at *5 (M.D. Fla. Apr. 9, 2012) (noting that § 770.01, Fla. Stat. is a "jurisdictional condition precedent") (citing *Ross v. Gore*, 48 So. 2d 412, 415 (Fla. 1950) (same)); *see also Nelson*, 667 F. Supp. at 1473-75 (notice pursuant to § 770.01, Fla. Stat. is a condition precedent to maintaining an action).

Guo fails to allege any compliance with Chapter 770, and cannot in good faith do so because he did not supply CBS12 with pre-suit notice.  This, alone, mandates dismissal.  *See* Fed. R. Civ. P. 9(c); *Laney v. Knight-Ridder Newspapers, Inc*., 532 F. Supp. 910, 913 (S.D. Fla. 1982) (dismissing complaint for failure to comply with notice requirements); *Bayliss v. Cox Radio, Inc*., No. 8:10-cv-1030, 2010 U.S. Dist. LEXIS 111758, at *8-12 (M.D. Fla. Oct. 13, 2010) ("plaintiff must generally allege compliance with section 770.01," and "failure to comply with a statutory condition precedent generally requires dismissal") (internal citations omitted). Guo has failed to allege compliance with Chapter 770, Florida Statutes.  His complaint must be dismissed.  *Laney*, 532 F. Supp. at 913.

### B.     The Complaint Also Fails as a Matter of Law to Plead Actual Malice

As a matter of federal pleading and state substantive law, the Complaint must also set forth facts that plausibly establish a prima facie case for defamation.  *Michel*, 816 F.3d at 703. Because the Complaint alleges only a failure to fully investigate allegations in a public record, and because a failure to investigate is insufficient as a matter of law to establish actual malice, the Complaint should be dismissed for this reason as well.

1.    Guo is a Public Figure

A determination of a plaintiff's public figure status is "a question of law to be determined by the court" at the earliest possible stage in the litigation. *Mile Marker, Inc*., 811 So. 2d at 844-46; *see also Lampkin-Asam v. Miami Daily News, Inc*., 408 So.2d 666, 668 (Fla. 3d DCA 1981). There are two types of public figures, "general" and "limited." *Turner*, 879 F.3d at 1272; *Saro Corp. v. Waterman Broad. Corp*., 595 So. 2d 87, 89 (Fla. 2d Cir. DCA 1992) ("General public figures are individuals who, by reason of fame or notoriety in a community, will in all cases be required to prove actual malice. Limited public figures, on the other hand, are individuals who have thrust themselves forward in a particular public controversy and are therefore required to prove actual malice only in regard to certain issues.").

Given the pleadings of the Complaint about his public campaign over this issue, Guo's own admissions, and a court ruling in another one of his defamation cases, the public-figure analysis here is straightforward. Guo has admitted in another defamation case that he is a limited-purpose public figure. *See* Exhibit D at 6-7 (Pl.'s Opp. to Def.'s Special Mot. to Strike). While he painted that case as a personal dispute and not a public controversy, his admissions are notable for the issues underlying the Report: "Guo has proudly engaged in purposeful activities with the intent of drawing attention to outrageous and systemic corruption in China. . . [h]e has 'thrust' his voice and opinions into the 'vortex' of an important public controversy in China." *Id.* at 7. The California court found that Mr. Guo was at least a limited-purpose public figure for the purposes of "tweets about Plaintiff (Guo) linking him to corruption, lying, and spying," and noted that the interest of national news publications as to "whether his allegations about China's government are true" suggested that he might well be a public figure for general purposes. *See* Exhibit C (Minute Order re: Special Motion to Strike). The California court's analysis applies

with equal force in a case where the underlying issue, as framed by the Complaint, is whether Guo is a "spy" as the Strategic Vision counterclaims allege, or as he asserts, a dissident and "longstanding critic of corruption" in China.  Compl. ¶ 1.

Because Mr. Guo is at least a limited-purpose public figure for purposes of this lawsuit, he must plead and prove actual malice to prevail on his defamation claim.  *See Silvester v. Am. Broad. Cos.*, 839 F.2d 1491, 1498 (11th Cir. 1988) (plaintiffs were limited-purpose public figures who "voluntarily placed themselves in a position and acted in a manner which invited public scrutiny and comment" and therefore "must present clear and convincing evidence that the defendants acted with actual malice"); *Turner*, 879 F.3d at 1273 (same).

2.     The Complaint Fails to Allege Facts Plausibly Showing Actual Malice

In defamation law, "actual malice" is a constitutional protection designed to afford "breathing space" for journalists to report on matters of public concern about public figures. *Sullivan*, 376 U.S. at 271-72.  Here, as outlined above, this includes public allegations that a politically connected Chinese billionaire who is a member of the President's exclusive Florida club is a "spy" for a foreign government.  The actual malice inquiry looks to defendants' subjective belief as to the truth or falsity of the challenged statements at the time of publication, and requires plaintiffs to plead, and ultimately prove by "clear and convincing evidence," that they were published with actual knowledge that they were false or with a "high degree of awareness" of "probable falsity."  *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964); *see also Michel*, 816 F.3d at 703 (stating that test is whether defendant "actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false") (citing *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)); *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008).  As the U.S. Supreme Court has explained, "actual

17

malice" is generally limited to circumstances where a "story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call." *St. Amant*, 390 U.S. at 732.  Notably, actual malice is not "[i]ll will, improper motive[,] or personal animosity." *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1198 n.17 (11th Cir. 1999) (applying Florida law); *see also Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510-11 (1991).

Federal courts in this Circuit and elsewhere routinely dismiss defamation claims by public figures that fail to allege facts giving rise to actual malice.  *See, e.g.*, *Michel*, 816 F.3d at 702 ("[E]very circuit that has considered the matter has applied the *Iqbal/Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice") (citing cases); *see also Turner*, 879 F.3d at 1274 (affirming dismissal of defamation case brought by limited-purpose public figure for failure to adequately plead actual malice).[4]  Similarly, Florida courts have held that a plaintiff must do more than invoke the "magic words" of actual malice and that a plaintiff's failure adequately to plead the requisite degree of fault sufficed to doom a plaintiff's claim.  *See, e.g.*, *From*, 400 So. 2d at 55–58 (stating that "even though the complaint contains the magic words and allegations of actual malice," the article was not libelous when measured by the actual malice standard); *Frieder v. Prince*, 308 So. 2d 132, 134 (Fla. 3d DCA 1975) (affirming dismissal because complaint "fails to set forth facts which are legally sufficient to establish actual malice").

The allegations of the Complaint utterly fail to meet these high standards.  Although his Complaint includes a sprinkling of words associated with actual malice—he alleges that

---

[4] *See also, e.g.*, *Biro v. Condé Nast*, 807 F.3d 541, 544-45 (2d Cir. 2015); *McDonald v. Wise*, 769 F.3d 1202, 1220 (10th Cir. 2014); *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013); *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 58 (1st Cir. 2012).

"Defendants knew or should have known that the statements were false," Compl. ¶38, and that Defendants made the statements at issue "with a reckless disregard for the truth," Compl. ¶40— these are legal conclusions that do not satisfy the requirements of *Twombly* and its progeny. *See, e.g.*, *Turner*, 879 F.3d at 1273 (allegations that defendants "knowingly and recklessly" ignored information insufficient to plead actual malice); *Schatz*, 669 F.3d at 56 (defamation complaint "us[ing] actual-malice buzzwords" that are not "backed by well-pled facts" cannot survive motion to dismiss.); *Mayfield*, 674 F.3d at 378 (assertion that defendants' allegedly defamatory statements "'were known by [them] to be false at the time they were made, were malicious or were made with reckless disregard as to their veracity' is entirely insufficient" under *Iqbal* and *Twombly*); *cf. Michel*, 816 F.3d at 702 ("Joining [other Circuits'] chorus, we hold that the plausibility pleading standard applies to the actual malice standard in defamation proceedings.").

The only *facts* alleged by the Complaint to establish fault on the part of CBS12 or O'Brien is an alleged failure to investigate the truth or falsity of the espionage allegation in Strategic Vision's publicly filed counterclaims. *See, e.g.*, Compl. ¶ 38 ("[E]ven a cursory review of court records would have shown Defendants' statements to be false.").  Even apart from the fair report privilege, an alleged failure to investigate alone does not constitute actual malice. *St. Amant*, 390 U.S. at 731 ("[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing."); *Michel*, 816 F.3d at 703 ("[A] failure to investigate, standing on its own, does not indicate the presence of actual malice.") (citing *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989)); *Times Publ'g Co. v. Huffstetler*, 409 So. 2d 112, 113 (Fla. 5th DCA 1982) (same); *Palm Beach Newspapers, Inc. v. Early*, 334 So. 2d 50, 53 (Fla 4th DCA 1976) (same).  These cases unequivocally hold that an alleged failure to investigate alone does not indicate *subjective*

*awareness* of probable falsity.  Thus, because none the Complaint's allegations, even if they were true, therefore constitute actual malice as a matter of law, and his Complaint must be dismissed for this reason as well.

## **CONCLUSION**

For all of the foregoing reasons, the Court should dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Respectfully submitted,

Dated: October 8, 2019

 **Deanna K. Shullman**                      
Deanna K. Shullman
SHULLMAN FUGATE PLLC
2101 Vista Parkway, Suite 4006
West Palm Beach, FL  33411
Telephone: (561) 429-3619
dshullman@shullmanfugate.com

Chad R. Bowman (admitted *pro hac vice*)
BALLARD SPAHR LLP
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
bowmanchad@ballardspahr.com

Kaitlin M. Gurney (admitted *pro hac vice*)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone: (215) 864-8585
gurneyk@ballardspahr.com

*Counsel for Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that, on this 8th day of October 2019, I caused a true and correct copy of the foregoing Motion to Dismiss and supporting Memorandum of Law to be e-filed via CM/ECF and served as follows:

Brian M. Silverio
Silverio & Hall, P.C.
255 8th Street South
Naples, FL 34102
(By ECF)

Aaron A. Mitchell
Lawall & Mitchell, LLC
162 E. 64th Street
New York, NY 10065
aaron@lmesq.com
(By Email)

<u>**Deanna K. Shullman**</u>
Deanna K. Shullman